Joshua M. Masur (*pro hac vice*)
   *masur@turnerboyd.com*
Karen I. Boyd (*pro hac vice*)
   *boyd@turnerboyd.com*
TURNER BOYD, LLP
2625 Middlefield Road #675
Palo Alto, California 94306
Telephone: (650) 529-1575
Facsimile: (650) 472-8028

John Whipple
   *jwhipple@pashmanstein.com*
Jennifer Castranova
   *jcastranova@pashmanstein.com*
PASHMAN STEIN, P.C.
Court Plaza South
21 Main Street, Suite 100
Hackensack, NJ 07601
Telephone: (201) 488-8200
Facsimile: (201) 488-5556

Attorneys for Defendant
FINELITE, INC.

**UNITED STATES DISTRICT COURT**

**DISTRICT OF NEW JERSEY**

| | |
|---|---|
| LEDALITE ARCHITECTURAL PRODUCTS,<br><br>                *Plaintiff,*<br><br>   v.<br><br>FINELITE, INC.,<br><br>                *Defendant.* | Civil Action No. 2-09-cv-06155<br><br>JURY TRIAL DEMANDED |

**MEMORANDUM IN SUPPORT OF DEFENDANT FINELITE, INC.'S MOTION TO TRANSFER VENUE TO THE NORTHERN DISTRICT OF CALIFORNIA PURSUANT TO 28 U.S.C. § 1404(a)**

**TABLE OF CONTENTS**

I.   INTRODUCTION ..................................................................................................................1

II.  LEGAL STANDARDS .......................................................................................................1

III. ARGUMENT........................................................................................................................5

    A.   This Action Could Have Been Brought In the Northern District of California ..................................................................................................................5

    B.   Considerations of Convenience and Justice Favor Transfer...................................5

        1.   Ledalite's Choice of Forum Is Entitled to Little Weight, As New Jersey Is Not Its Home Forum and the Claim Is Unconnected to the Forum..............................................................................5

        2.   Relevant Sources of Proof Are Located Predominantly In or Near the Northern District of California......................................................7

        3.   The Northern District of California Is the Forum With the Greatest Interest In this Controversy ..........................................................12

        4.   The Northern District of California Would Be Best Able to Enforce Judgment .......................................................................................12

        5.   New Jersey Residents Should Not Be Burdened With Jury Service.......................................................................................................13

IV.  CONCLUSION...................................................................................................................13

## **TABLE OF AUTHORITIES**

### **CASES**

*American Telephone & Telegraph Co. v. MCI Comm's Corp.*,
 736 F.Supp. 1294 (D.N.J. 1990) ............................................................................. 6

*Ballard Medical Products v. Concord Laboratories, Inc.*,
 70 F.Supp. 796 (D. Del. 1988) ................................................................................. 5

*Digiorgio Corp. v. Mendez & Co.*,
 230 F. Supp. 2d 552 (D.N.J. 2002) ........................................................................... 7

*E.I. Du Pont de Nemours & Co. v. Diamond Shamrock Corp.*,
 522 F.Supp. 588 (D.Del. 1981) ................................................................................ 6

*Egyptian Goddess, Inc. v. Swisa, Inc.*,
 543 F.3d 665 (Fed. Cir. 2008) ................................................................................ 10

*Hoffer v. Infospace.com*,
 102 F. Supp. 2d 556 (D.N.J. 2000) ........................................................ 4, 5, 11, 12

*LG Elecs. Inc. v. First Int'l Computer*,
 138 F. Supp. 2d 574 (D.N.J. 2001) ........................................................................... 6

*Liggett Group Inc. v. R.J. Reynolds Co.*,
 102 F. Supp. 2d 518 (D.N.J. 2000) ........................................................................... 9

*Lony v. E.I. Du Pont de Nemours & Co.*,
 886 F.2d 628 (3d Cir. 1989) ..................................................................................... 5

*OddzOn Products, Inc. v. Just Toys, Inc.*,
 122 F.3d 1396 (Fed. Cir. 1997) ....................................................................... 10, 11

*Osteotech, Inc. v. Gensci Regeration Sciences, Inc.*,
 6 F. Supp. 2d 349 (D.N.J. 1993) ............................................................................... 6

*Ricoh Company, Ltd. v. Honeywell, Inc.*,
 817 F.Supp. 473 (D.N.J. 1993) ......................................................................... passim

*Sun Hill Industries, Inc. v. Easter Unlimited, Inc.*,
 48 F.3d 1193 (Fed. Cir. 1995) ................................................................................ 10

*Swift Canadian Co. v. Banet*,
 224 F.2d 36 (3d Cir. 1955) ....................................................................................... 6

*United States ex rel. Groundwater Techs., Inc. v. Sevenson Envtl. Servs.*,
    2000 U.S. Dist. LEXIS 20779 (D.N.J., Oct. 5, 2000) ........................................................ 13

*Van Dusen v. Barrack*,
    376 U.S. 612 (1964) ............................................................................................................ 4

## STATUTES

28 U.S.C. § 1400(b) ................................................................................................................... 5

28 U.S.C. § 1404(a) ................................................................................................................... 4

## RULES

Fed. R. Civ. P. 26(a)(1)(A)(ii) ............................................................................................. 3, 11

I.  **INTRODUCTION**

Ledalite Architectural Products ("Ledalite"), a Canadian subsidiary of Dutch conglomerate Koninklijke Philips Electronics N.V., sued Finelite, Inc. ("Finelite"), a California corporation, in the District of New Jersey. Why Ledalite chose this district is a mystery, because there is no significant connection between this dispute and this District.

Neither party has any presence in New Jersey. A Ledalite employee who resides in British Columbia, thousands of miles away, invented the patents-in-suit. All of the accused products were designed, manufactured, marketed, and sold on the other side of the country, in California. The Northern District of California is more convenient to essentially every relevant witness, document, and thing – and even to Ledalite itself. The only ties alleged by Ledalite between this dispute and this District – the installation of a fraction of the allegedly infringing products in New Jersey, and a purported third-party witness who resides here – are inadequate to justify Ledalite's choice to bring suit here.

This Court's well-settled patent case law establishes that, where "the central and essential activities relevant to [a] lawsuit – the design, research, development and marketing of the [accused products] – occurred outside of New Jersey," the case should be transferred to the district where those "central and essential activities" occurred. *Ricoh Company, Ltd. v. Honeywell, Inc.*, 817 F.Supp. 473, 479 (D.N.J. 1993). This case should be transferred to the only venue with any meaningful connection to any alleged infringement: the Northern District of California.

II.  **STATEMENT OF FACTS**

Defendant Finelite is a privately held California corporation with a principal place of

business at 30500 Whipple Road, Union City, California 94587.  Complaint (D.I. 1), ¶ 2; Answer (D.I. 7); Declaration of Terry Clark ("Clark Decl."), ¶ 2.  Finelite has no corporate presence or employees in the State of New Jersey.  Clark Decl., ¶ 4.

Plaintiff Ledalite is a Canadian limited partnership having a principal place of business at 19750 92A Avenue, Langley, British Columbia, Canada.  Complaint, ¶ 1.  Ledalite's website shows no corporate address in the state of New Jersey.  Declaration of Joshua M. Masur ("Masur Decl."), ¶ 2.  Ledalite's complaint alleges that certain of Finelite's High Performance Recessed ("HPR") line of lighting fixtures (the "accused products") infringe United States Patents Nos. D556,358, D572,858, D579,598, and D595,006 (the "patents-in-suit").  Complaint, ¶¶ 8, 12, 16, 20.  The patents-in-suit list a sole inventor, Scott R. Santoro, who is employed by Ledalite and resides in British Columbia, Canada.  Complaint, Exs. A-D; Masur Decl., Ex. J (Ledalite Initial Disclosures) at 2.  Ledalite's initial disclosures identify three affiliate witnesses in British Columbia, Finelite's CEO in California, and a purported third-party witness in New Jersey.  Masur Decl., Ex. J at 2-3.  Ledalite's initial disclosures identify "documents … located at Ledalite's offices in Langley, British Columbia, Canada and the offices of Ledalite' s corporate parent, Philips Professional Luminaires North America in Burlington, Massachusetts," which it is purportedly gathering for review and production.  *Id.* at 3.  Ledalite also asserts that it "expects" that there are documents in Finelite's possession, custody, or control, *i.e.*, in Union City, California, that are relevant to "at least, the structure, operation, manufacture, marketing, and sale ofthe infringing products, Finelite's infringement of the patents-in-suit, and damages."  *Id.* at 3-4.  Finally, Ledalite asserts that it "expects to discover documents, electronically stored information, and tangible things in the possession, custody, or control of third parties, including ILA Lighting, 96 Freneau Avenue, Matawan, New Jersey"; however, notwithstanding that Fed.

— 2 —

R. Civ. P. 26(a)(1)(A)(ii) requires that such documents be "descr[ibed] by category and location," Ledalite's disclosures identify no category for such third-party documents that might establish any relevance to this action. Masur Decl., Ex. J at 4.

All decisions regarding the development, testing, research and production, marketing and sale of the accused products occurred at Finelite's corporate headquarters in Union City, California. Clark Decl., ¶ 3. All allegedly infringing products at issue in this action that were shipped to purchasers in New Jersey were shipped F.O.B. Union City, California. Clark Decl., ¶ 5. Fewer than one-eighth of the accused HPR-series products sold as of April 21, 2010 appear to have been delivered to customers in New Jersey. Clark Decl., ¶ 6. Larger deliveries were made to customers for installation in Texas and Colorado, and comparable quantities were delivered to purchasers for installation in California and New York. *Id.* Finelite's initial disclosures identify documents, electronically stored information, and things located in Union City, California, and witnesses located in California, British Columbia, and Kentucky. Masur Decl., Ex. I at 7, 3-6.

The Vancouver, British Columbia airport is approximately 2,420 miles from the Newark, New Jersey airport, and only 800 miles from San Francisco, California, airport. Masur Decl., ¶ 3. Flights between Vancouver and San Francisco are significantly more plentiful, shorter, and cheaper than those between Vancouver and Newark. Masur Decl., ¶¶ 4, 5 and Exs. F, G.

On June 1, 2010, Ledalite appeared through counsel in the Northern District of California in a case involving the identical parties, entitled *Finelite, Inc. v. Ledalite Architectural Products*, Case No. 3:10-cv-01276-MMC.[1]  Masur Decl., ¶ 6, Ex. H.

---

[1] The *Finelite v. Ledalite* case in the Northern District of California alleges that Ledalite has engaged in false patent marking, false advertising, and unfair competition with Finelite. The

— 3 —

### III.     LEGAL STANDARDS

"For the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought." 28 U.S.C. § 1404(a); *Hoffer v. Infospace.com*, 102 F. Supp. 2d 556, 569 (D.N.J. 2000). The purpose of section 1404 "is to prevent the waste of 'time, energy and money' and 'to protect litigants, witnesses and the public against unnecessary inconvenience and expense.'" *Van Dusen v. Barrack*, 376 U.S. 612, 616 (1964) (quoting *Continental Grain Co. v. Barge FBL-585*, 364 U.S. 612, 616 (1960)); *Ricoh*, 817 F.Supp. at 479 (D.N.J. 1993).

"[T]hree factors must be considered in transferring cases: (1) the convenience of the parties, (2) the convenience of the witnesses and (3) the interests of justice." *Ricoh*, 817 F.Supp. at 479 (citing *Sandvik, Inc. v. Continental Ins. Co.*, 724 F. Supp. 303, 306 (D.N.J. 1989)). As a preliminary matter, section 1404(a) requires that the new transferee forum must be one in which the action "might have been brought." 28 U.S.C. § 1404(a). Factors relating to the "private interests" of the parties in the context of litigation include the plaintiff's choice of forum, whether the claim arose elsewhere, the ease of access to sources of proof, availability of compulsory process over unwilling witnesses, and the cost of attendance of willing witnesses. *Hoffer*, 102 F.Supp. 2d at 572; *see also Ricoh*, 817 F.Supp. at 479 (citing *Gulf Oil*, 330 U.S. at 508). Factors relating to "public interests" in the litigation include court congestion and other administrative difficulties, placing the burden of jury duty on those having the closest ties to the action, local interest in having cases adjudicated at home and familiarity of the forum court with

---

false marking allegations relate to nine Ledalite patents, four of which are also at issue here. That case will require determination of whether Ledalite's patents cover its own products. Because Finelite's products are not at issue in that case, there is no common nucleus of operative facts that would require joinder. However, if this case is transferred, Finelite intends to identify the two cases as related, for the sake of judicial efficiency and to facilitate resolution of any common legal issues involving patent scope.

the applicable law.  *Id.*

## IV.  ARGUMENT

**A.  This Action Could Have Been Brought In the Northern District of California**

To transfer this action to the Northern District of California, it must have been proper for the case to have been brought there originally.  28 U.S.C. § 1404(a).  The underlying cause of action here is patent infringement, and venue in patent infringement trials is proper in any judicial district "where the defendant resides or where the defendant has committed acts of infringement and has a regular and established place of business." 28 U.S.C. § 1400(b). For the purposes of section 1400(b), "'the judicial district where the defendant resides' is the state where the defendant is incorporated."  *Ballard Medical Products v. Concord Laboratories, Inc.*, 70 F.Supp. 796, 798 (D. Del. 1988) (citing *Fourco Glass Co. v. Transmirra Products Corp.,* 353 U.S. 222, 229 (1957)).

Finelite is subject to personal jurisdiction in the Northern District of California because it resides there and because any allegedly infringing acts were committed there.  Accordingly, this action could have been brought in the Northern District of California.

**B.  Considerations of Convenience and Justice Favor Transfer**

Because this action could have been brought in the Northern District of California, the next question is whether this Court should exercise its discretion to transfer the case there.  *See Hoffer*, 102 F. Supp. 2d at 570.

### 1.  *Ledalite's Choice of Forum Is Entitled to Little Weight, As New Jersey Is Not Its Home Forum and the Claim Is Unconnected to the Forum*

Ledalite is a Canadian limited partnership, having a principal place of business in British Columbia, Canada, and is not a resident of New Jersey.  Complaint (D.I. 1), ¶ 1.  The

— 5 —

"preference for honoring a plaintiff's choice of forum is simply that, a preference; it is not a right." *E.I. Du Pont de Nemours & Co. v. Diamond Shamrock Corp.*, 522 F.Supp. 588, 591-92 (D.Del. 1981); *see also American Telephone & Telegraph Co. v. MCI Comm's Corp.*, 736 F.Supp. 1294, 1306 (D.N.J. 1990) (hereinafter "*AT&T*") (the plaintiff's selection is "neither dispositive of the transfer analysis nor is it the only factor to be considered"). It is "well-established that a plaintiff's choice of forum is afforded less deference when the plaintiff has chosen a foreign forum." *Ricoh*, 817 F. Supp. at 480. Because New Jersey is not Ledalite's home forum, Ledalite's choice to sue in this District is entitled to little weight. *See id*. at 480-81.

In patent infringement actions, "the preferred forum is that which is the center of gravity of the accused activity.'" *Osteotech, Inc. v. Gensci Regeration Sciences, Inc.*, 6 F. Supp. 2d 349, 357 (D.N.J. 1993); *see also Ricoh*, 817 F. Supp. at 481 n.17. "The district court ought to be as close as possible to the area of the infringing device and the hub of activity centered around its production." *LG Elecs. Inc. v. First Int'l Computer*, 138 F. Supp. 2d 574, 590 (D.N.J. 2001) (citing *Ricoh*, 817 F. Supp. at 481 n.17). The Court should consider "the location of a product's development, testing, research and production. Also relevant is the place where marketing and sales decisions were made, rather than where the limited sales activity has occurred." *Id.* (internal citations omitted).

All of Finelite's decisions regarding the development, testing, research, production, marketing, and sales of the accused products occurred at Finelite's corporate headquarters in the Northern District of California. Clark Decl., ¶ 3. Also, even the allegedly infringing sales to purchasers in New Jersey were made in the Northern District of California, because all products were shipped F.O.B. Union City, California. Clark Decl., ¶ 5; *see Swift Canadian Co. v. Banet*, 224 F.2d 36, 38 (3d Cir. 1955) ("when goods are delivered 'free on board' pursuant to contract

the presumption is that the property passes thereupon"); *Digiorgio Corp. v. Mendez & Co.*, 230 F. Supp. 2d 552, 553 (D.N.J. 2002) ("All sales between DiGiorgio and Grande are F.O.B. New Jersey, meaning that title to the goods passes in New Jersey and Grande is responsible for shipping the goods to Puerto Rico").

Even if Finelite had itself delivered accused products to New Jersey, this District would be peripheral to any accused activity. Seven-eighths of the total sales of the accused HPR products were made to end users outside New Jersey, and Finelite has sold comparable quantities of those products to purchasers in other states, including Texas, Colorado, and most notably, California. Clark Decl., ¶ 6. Furthermore, those limited sales of accused products are Finelite's *only* accused activities that touch New Jersey. Clark Decl., ¶ 6. Rather, as in the *Ricoh* case, "the central and essential activities relevant to this lawsuit – the design, research, development and marketing of the [accused products] – occurred outside of New Jersey." *Ricoh,* 817 F. Supp. at 483. The center of this dispute, and the appropriate forum for this action, is the Northern District of California, not this District.

Since Ledalite has selected a forum that is unconnected with the central facts of the case instead of the Northern District of California, where the evidence regarding the underlying claim resides, this factor "heavily favors transfer" to the California. *LG Electronics Inc. v. First Int'l Computer, Inc.*, 138 F. Supp. 2d 574, 590 (D.N.J. 2001).

### 2. *Relevant Sources of Proof Are Located Predominantly In or Near the Northern District of California*

The second relevant private interest factor concerns the availability of witnesses and the documentary evidence of both parties in the available districts. *Ricoh*, 817 F. Supp. at 483.

#### *(i)   Convenience of the Parties*

As this District's courts have observed, "from an economic standpoint it certainly makes

sense to conduct a trial … where only one party and witnesses have to travel rather than where both parties have to travel." *Ricoh*, 817. F. Supp. at 485; *see also S.C. Johnson*, 571 F. Supp. at 1187 ("maintenance of suit in a district in which one of the parties resides [is] preferable"). Finelite is a California corporation, and its relevant documents, witnesses, and other evidence necessary for litigation are overwhelmingly located on the other side of the country, in the Northern District of California.

Conversely, Ledalite is a Canadian corporation located in British Columbia, and has chosen to prosecute this action thousands of miles from its home province. It would face no greater inconvenience in litigating this action in San Francisco. From Ledalite's corporate headquarters in British Columbia, it is less than 800 miles to San Francisco, but approximately three times as far to Newark. Masur Decl., ¶ 3, Exs. D, E. According to a May 20, 2010 search on the online travel website Travelocity, on July 5, 2010, the day before the status conference in this case, there are only two nonstop flights from Vancouver to Newark, but nine from Vancouver to San Francisco; moreover, the fastest flight from Vancouver to Newark is 5 hours and 13 minutes, while the fastest from Vancouver to San Francisco is three hours shorter. Masur Decl., ¶¶ 4, 5, Exs. F, G. Ledalite's primary counsel are resident in Wilmer Hale's Boston office, and it relies on Wilmer Hale's New York office for local counsel. Were the case transferred to the Northern District of California, Ledalite could do the same with Wilmer Hale's Palo Alto office. Indeed, Ledalite appears to have already engaged Wilmer Hale partner Keith Leonard Slenkovich and associate Tobias Mock as counsel in the Northern District of California, in a case involving the identical parties, entitled *Finelite, Inc. v. Ledalite Architectural Products*, Case No. 3:10-cv-01276-MMC. Masur Decl. ¶ 6, Ex. H (Notice of Appearance on Behalf of Defendant Ledalite Architectural Products, June 1, 2010).

Because the Northern District of California is far more convenient for Finelite, and certainly no less convenient for Ledalite, this factor weighs strongly in favor of transfer.

### *(ii)* *Convenience of Witnesses*

A court must consider the convenience of potential witnesses when deciding a motion to transfer. *See Liggett Group Inc. v. R.J. Reynolds Co.*, 102 F. Supp. 2d 518, 534 (D.N.J. 2000) ("In assessing the private interests of the parties, the convenience of potential witnesses also must be balanced").

Finelite has its principal place of business in California, and is incorporated under the laws of that state. Answer (D.I. 7; Apr. 8, 2010), ¶ 2. The employees responsible for the design, production, and sale of any accused products work at and live near to Finelite's corporate headquarters in California. Masur Decl., ¶ 3; Ex. I (Finelite's May 27, 2010 Initial Disclosures) at 3-4. Many of these employees may be asked to testify about the accused products in this case, and such testimony will likely form the foundation of any claims or defenses to be adjudicated at trial. Transfer would greatly facilitate the accessibility and availability of these witnesses to participate in the litigation process.

Ledalite's initial disclosures identify a single witness residing in New Jersey: Don Young of ILA Lighting, a third-party who, according to Ledalite, "may have discoverable information regarding Finelite's infringement of the patents-in-suit and the similarity between the designs disclosed by the patents-in-suit and the accused products." Masur Decl., Ex. J at 2. Based on communications with counsel for Ledalite, Finelite understands that Ledalite intends to proffer Mr. Young's testimony as "evidence of at least one instance of confusion" between the accused Finelite products and Ledalite products. Masur Decl., Ex. K at 1. But such testimony would be tangential, at most, to any issue in this case. Whether a design patent is infringed

requires the finder of fact to determine "whether an ordinary observer, familiar with the prior art, would be deceived into thinking that the accused design was the same as the *patented design*," not the patentee's product that the design allegedly covers. *Egyptian Goddess, Inc. v. Swisa, Inc.*, 543 F.3d 665, 672 (Fed. Cir. 2008) (*en banc*) (emphasis added). Comparing the patented and accused products "risks relying on unclaimed and therefore irrelevant features as grounds for similarity or difference. It is legal error to base an infringement finding on features of the commercial embodiment not claimed in the patent." *Sun Hill Industries, Inc. v. Easter Unlimited, Inc.*, 48 F.3d 1193, 1196 (Fed. Cir. 1995), *overruled on other grounds by Egyptian Goddess*, 534 F.3d at 671, 677.

Even assuming that Mr. Young were to qualify under *Egyptian Goddess* as an "ordinary observer, familiar with the prior art," his testimony regarding any alleged actual confusion between the parties' products, rather than between the accused products and the *patented design*, "is of little probative value." *OddzOn Products, Inc. v. Just Toys, Inc.*, 122 F.3d 1396, 1407 (Fed. Cir. 1997) (because "'actual confusion' evidence is of little probative value because it does not establish whether the [accused products] have an ornamental design similar to that of the patented design," exclusion was harmless error). Moreover, even assuming for the sake of argument that Mr. Young could proffer relevant testimony but would be unwilling to travel to California to testify at trial, his testimony could be taken by deposition in New Jersey. The residence of a solitary witness on a minor issue certainly does not outweigh the substantial burden on essentially all of the other witnesses of litigating this action in New Jersey rather than California.

As transfer would significantly decrease the burden placed on witnesses necessary to both Ledalite's claims and Finelite's defenses, the convenience of witnesses weighs in favor of

transfer.

### *(iii)   Location of Relevant Documents and Things*

The "'relative ease of access to sources of proof' is another private interest District Courts may consider when evaluating a motion to transfer." *Hoffer*, 102 F. Supp. at 575.

This case involves four counts of infringement of design patents owned by Ledalite. Patent infringement claims "require analysis of facts, documents and testimony relating to the design, development and production" of any allegedly infringing products. *Ricoh*, 817 F. Supp. at 483. All documents and things relating to the design, development, and production of the accused products are located at Finelite's corporate headquarters in Union City, California. Clark Decl., ¶ 3. Finelite has no documents or things located in New Jersey relevant to the design, development, production, manufacture, or sale of the accused products, or to any other issue in this case. Clark Decl., ¶ 3; Masur Decl., Ex. I (Finelite's May 27, 2010 Initial Disclosures) at 7.

Ledalite's initial disclosure states that it "expects" to discover documents, electronically stored information, and tangible things in the possession of ILA Lighting, the company of Ledalite's prospective third-party witness, located in Matawan, New Jersey. Masur Decl., Ex. J (Ledalite's June 10, 2010 Initial Disclosures) at 4. However, this bare assertion of the existence of documents located in this State, without any "description by category" required by Rule 26(a)(1)(A)(ii) to establish any relevance to this action, should carry no weight at all. Any documents held by Mr. Young's company regarding alleged similarities between the parties' products, rather than between the accused products and a *patent*, are at most "of little probative value." *OddzOn Products*, 122 F.3d at 1407.

Since all or essentially all relevant documents and things are located outside this State — instead, they are located in or near Finelite's facilities in California or Ledalite's facilities in

— 11 —

British Columbia — this factor weighs in favor of transfer.

### 3. The Northern District of California Is the Forum With the Greatest Interest In this Controversy

"'[T]he local interest in having localized controversies decided at home'" requires the Court to "consider[] … 'the locus of the alleged culpable conduct ... and the connection of the conduct to plaintiff's chosen forum.'"  *Hoffer*, 102 F. Supp. 2d at 576 (quoting *Lony v. E.I. Du Pont de Nemours & Co.*, 886 F.2d 628, 640 (3d Cir. 1989); and *Lacey v. Cessna Aircraft Co.*, 862 F.2d 38, 48 (3d Cir. 1988)).

The conduct giving rise to Ledalite's claims of patent infringement — including the design, production, manufacture, and sale of the accused products — occurred in Northern California, not New Jersey.  As a matter of contract law, all sales of the allegedly infringing products occurred in California.  Clark Decl., ¶ 5, Ex. A (sales made F.O.B. Union City, California).  But even if these sales were considered made in New Jersey, and "even if sales were a significant factor in determining local interest, this factor would not favor New Jersey any more than" the Northern District of California, where sales also occurred.  *Ricoh*, 817 F. Supp. at 486.

As this Court concluded in the Hoffer case, "[b]ecause a substantial amount, if not all, of the alleged conduct occurred in [the Northern District of California, that District] has a stronger public interest in adjudicating this dispute."  *Hoffer*, 102 F. Supp. 2d at 576.

### 4. The Northern District of California Would Be Best Able to Enforce Judgment

The ease of enforcing any judgment also weighs in favor of transfer.  All decisions regarding the design, manufacture, and sale of existing and potential products are made by Finelite's employees at its facilities in California.  Clark Decl., ¶ 3.  "If plaintiff obtains a judgment in [Finelite's] home state, it will be easier to enforce than obtaining a judgment out of

state and then taking it to [California] to enforce." *United States ex rel. Groundwater Techs., Inc. v. Sevenson Envtl. Servs.*, 2000 U.S. Dist. LEXIS 20779, at *14-15 (D.N.J., Oct. 5, 2000).

### 5. *New Jersey Residents Should Not Be Burdened With Jury Service*

Jury duty should "not be imposed upon the people of a community which has no relation to the litigation." *Ricoh*, 817 F. Supp. at 486 (citing *Ferens v. John Deere Co.*, 494 U.S. 515, 529 (1990)). All operative facts in this litigation – from the initial design, production, and manufacture to the sale of any accused products – occurred thousands of miles away, on the other side of the country. There is no reason to require New Jersey jurors to decide this case.

### V. CONCLUSION

The transfer of this litigation to the Northern District of California will serve the convenience of the parties and the interests of justice. Ledalite has no direct ties to this forum, and there is no clear nexus between the allegedly infringing activity and the District of New Jersey. Finelite's principal place of business is in California, where the majority of the relevant evidence, documents, and witnesses are found. Transfer would reduce the burden of litigation by facilitating access to necessary witnesses and documents located at Finelite's corporate headquarters through all stages of litigation. The Northern District of California has significant interest in this controversy, as the relevant conduct occurred exclusively within its jurisdiction, and it would be best able to enforce any judgment.

Defendant Finelite respectfully requests this Court grant its motion to transfer this action to the Northern District of California, as it is a proper forum for this action and transfer would serve the interests of justice and the convenience of the parties.

Dated: June 11, 2010	FINELITE, INC.

By its attorneys:

By: _____
Joshua M. Masur

TURNER BOYD LLP